ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1379 (ADM/AJB)

UNITED STATES OF AMERICA, )
)
PLAINTIFF, )
)
V. )
)
REAL PROPERTY LOCATED AT 19705 )
COUNTRY ROAD 30, CORCORAN, MN, )
)
DEFENDANT. )

STIPULATED EXPEDITED SETTLEMENT AGREEMENT

IT IS HEREBY STIPULATED by and between the plaintiff, United States of America, and the claimant, Wells Fargo Bank Minnesota, N.A., to compromise and settle its claim according to the following terms:

1. The parties hereby stipulate that any violations of 21 U.S.C. § 881(a)(7) involving the defendant property occurred without the knowledge of the claimant.

2. The plaintiff hereby recognizes the claim of the claimant and agrees that upon entry of a Final Order of Forfeiture disposing of all claims in this action, it will pay the claimant the following:

a. all unpaid principal due to the claimant under the mortgage instrument attached hereto as Exhibit A, which was recorded in the official records of Hennepin County Registrar of Titles on May 24, 2000, as Document No. 3281880, such unpaid



JAN 14 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

principal, however, not to exceed $46,654.44, which is the amount due on the Home Equity Access Line of Credit as of October 1, 2001; and

b. all unpaid interest at the contractual (not default) rate under the mortgage instrument identified as Exhibit A, until the date of payment.

3. The payment to the claimant shall be in full and final settlement and satisfaction of any and all claims by the claimant to the defendant property and all claims resulting from the incidents or circumstances giving rise to this lawsuit.

4. Upon payment, the claimant agrees to assign and convey its security interest to the plaintiff via recordable documents and to release and hold harmless the plaintiff, and any agents, servants, and employees of the plaintiff (or any state or local law enforcement agency) acting in their individual or official capacities, from any and all claims by the claimant and its agents which currently exist or which may arise as a result of the plaintiff's action against the defendant property.

5. The claimant acknowledges by entering into this Expedited Settlement Agreement that the plaintiff promptly recognized its claim and by so doing did not cause it to incur additional costs or fees.

6. As a part of settlement, the claimant agrees not to pursue against the plaintiff any other rights that it may have under the

mortgage instrument, including but not limited to the right to initiate a foreclosure action.

7. The claimant agrees to notify the United States Attorney and United States Marshals Service at the end of the first payment cycle in which a payment is not made under the terms specified in the Note. The claimant further agrees to join any of the plaintiff's motions for interlocutory or stipulated sale of the defendant property; to prevent any illegal use, destruction, or damage to the defendant property; and to prevent any transfer, sale or conveyance by the owners or occupants of the defendant property, within ten (10) days of the claimant's receipt of the motion(s).

8. The claimant understands and agrees that by entering into this expedited settlement of its claim to the defendant property, it waives any rights to further litigate against the plaintiff its claim to the defendant property and to petition for remission or mitigation of the forfeiture. Unless specifically directed by order of this Court, the claimant is hereby excused and relieved from further participation in this action.

9. The parties agree to execute further documents, to the extent necessary, to convey clear title to the defendant property to the plaintiff and to further implement the terms of this settlement, and each party agrees to bear its own costs and attorneys' fees.

10. The claimant understands and agrees that the plaintiff reserves the right to void the Expedited Settlement Agreement and terminate the forfeiture action at any time for legal reasons or within ninety (90) days after execution of this Expedited Settlement Agreement for economic reasons.

11. The terms of this Expedited Settlement Agreement are contingent upon forfeiture of the defendant property to the plaintiff and the Court's entry of a Final Order of Forfeiture disposing of all claims in this action. In the event the defendant property is not forfeited or the forfeiture action is terminated pursuant to paragraph 10 above, the Expedited Settlement Agreement is void. Further, the terms of this Expedited Settlement Agreement shall be subject to approval by the United States District Court and any violation of any terms or conditions shall be construed as a violation of an Order of the Court.

Dated: 12-10-01

THOMAS B. HEFFELFINGER
United States Attorney

BY: LIZABETH A. McKIBBEN
Assistant United States Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
612-664-5600

Re: Stipulated Expedited Settlement Agreement
U.S. v. 19705 County Road 30
Civil No. 01-1379 (ADM/SRN)

Dated: 12-21-01

THOMAS J. REITER & ASSOCIATES

BY: THOMAS J. REITER
Attorney for Claimant Wells Fargo Bank Minnesota, N.A.
The Saint Paul Building
6 West Fifth Street, 7th Floor
St. Paul, MN 55102-1420
651-297-6400

ORDER

The Stipulated Expedited Settlement Agreement is hereby APPROVED.

Dated: January 9, 2002

ANN D. MONTGOMERY
United States District Court Judge

3281880

837504

3281880

OFFICE OF THE REGISTRAR OF TITLES
HENNEPIN COUNTY, MINNESOTA
CERTIFIED FILED ON
MAY 24 2000
12 PM
REGISTRAR OF TITLES
BY ____ DEPUTY

ATI-Box 719-T [Space Above This Line For Recording Data]

RETURN DOCUMENTS TO:
ATI Title Company
2550 University Avenue West
St. Paul, MN 55114

Loan #: 30005830915

# MORTGAGE

THIS MORTGAGE("Security Instrument") is given on this 15th day of January, 2000. The Mortgagor is **Brian P. Weaver, a single person and Lori Ann Dallman, a single person**

("Borrower"). This Security Instrument is given to **Norwest Bank Minnesota, National Association**, whose address is **1455 West Lake Street, Minneapolis, MN 55408**, ("Lender"). Borrower owes Lender the principal sum of Fifthy thousand Dollars (U.S. $ 50,000.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 15, 2010 and for interest at the yearly rate of 9.25 percent. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of the Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in **Hennepin** County, Minnesota:

**The East Half of the East Half of the North Half of the Northwest Quarter of the Southwest Quarter of Section 12, Township 119, Range 23, West of the Fifth Principal Meridian, Hennepin County, Minnesota.**

**"This Mortgage secures an open end revolving line of credit. See attached Home Equity Access Line of Credit Rider."**

Henn Co MRT
TR#64483
05/18/2000
Paid $120.00

which has the address of **19705 County Road 30, Corcoran, MN 55340**
Minnesota (Street) (City) (Zip Code)
(Property Address)

MAY 05 2000

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3024 9/90 Amended 9/92 (page 1 of 6)
0009180133

REGISTRAR OF TITLES HENNEPIN COUNTY, MINN.

STATE OF MINNESOTA, COUNTY OF HENNEPIN
Certified to be a true and correct copy of the original on file and of record in my office.
OCT 04 2001
MICHAEL H. CUNNIFF, REGISTRAR OF TITLES
By B. Smart Deputy

EXHIBIT
A

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property;(b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon Payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contest in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 day of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights to the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30 -day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or to change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's rig to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist such are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payment as a loss reserve in lieu of mortgage insurance. Loss reserve

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The Proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument Immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender other wise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or the sums secured by this Security Instrument, whether or not then due.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is cosigning this Security Instrument only to mortgage, grant and convey the Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

by applicable law.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any environmental Law. The preceding two sentences shall not apply to the presence, use or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.. As used in this paragraph 20, "Environmental law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follow:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees.**

0009180133

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument to Borrower. Borrower shall pay any recordation costs.

**23. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**24. Interest on Advances.** The interest rate on advances made by Lender under paragraph 7 shall not exceed the maximum rate allowed by applicable law.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es):

| | | |
|---|---|---|
| ( ) Adjustable Rate Rider | ( ) Condominium Rider | ( ) 1-4 Family Rider |
| ( ) Graduated Payment Rider | ( ) Planned Unit Development Rider | ( ) Biweekly Payment Rider |
| ( ) Balloon Rider | ( ) Rate Improvement Rider | ( ) Second Home Rider |

(X) Other(s) [specify] Home Equity Access Line of Credit Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Brian P. Weaver

Lori Ann Dallman

STATE OF MINNESOTA, COUNTY OF HENNEPIN

On this 15th day of January, 2000, before me appeared Brian P. Weaver, a single person and Lori Ann Dallman, a single person personally known to be the person(s) described in and who executed the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free act and deed.

Notary Public

My Commission Expires:

P. G. SINGH
NOTARY PUBLIC-MINNESOTA
HENNEPIN COUNTY
My Commission Expires Jan. 31, 2000

This instrument was prepared by:
ATI Title Company
2550 University Avenue West
St. Paul, Minnesota 55114

0009180133

NORWEST BANKS

# Home Equity Access Line Rider

(Open end credit with variable rate interest)

This Home Equity Access Line Rider is dated 01/15/2000 and is an amendment to the Mortgage or Deed of Trust ("Mortgage") of the same date given by the undersigned ("Borrower") to secure Borrower's Home Equity Access Line Agreement with NORWEST BANK MINNESOTA, NATIONAL ASSOCIATION ("Lender") of the same date covering the property described in the Mortgage and located at:

19705 COUNTY ROAD 30 CORCORAN, MINNESOTA 55340
Property address

In addition to the covenants and agreements made in the Mortgage, Borrower and Lender further covenant and agree as follows:

1. The word "Note," as used in the Mortgage and this Rider, refers to the Home Equity Access Line Agreement.

2. The Note evidences an open end revolving line of credit agreement between Borrower and Lender. The amount stated in the Mortgage as the principal sum of the indebtedness is the credit limit for the line of credit. All advances made at any time by Lender in accordance with the terms of the Note, and all interest on the advances, shall be secured by the Mortgage. However, at no time shall the principal amount of the indebtedness secured by the Mortgage, not including sums advanced in accordance with the mortgage to protect the security of the Mortgage, exceed the stated credit limit for the line of credit.

3. The Note provides for:

- a variable rate of interest expressed as a daily periodic rate equal to 1/365 of an annual rate of 0.75 % plus the "Index Rate." The daily periodic rate may increase if THE HIGHEST PRIME RATE PUBLISHED IN THE WALL STREET JOURNAL 'MONEY RATES' TABLE (the "Index Rate") increases. The initial daily periodic rate is .025342 %. This corresponds to an annual percentage rate of 9.25 %. The annual percentage rate will never be more than 18%. The daily periodic rate will be adjusted on the first business day of every month, using the Index Rate in effect on the last business day of the prior month. An increase in the daily periodic rate may increase the monthly payment due.

NOTICE: THIS MORTGAGE SECURES CREDIT IN THE AMOUNT OF $ 50,000. LOANS AND ADVANCES UP TO THIS AMOUNT, TOGETHER WITH INTEREST, ARE SENIOR TO INDEBTEDNESS TO OTHER CREDITORS UNDER SUBSEQUENTLY RECORDED OR FILED MORTGAGES AND LIENS.

Brian P. Weaver
Borrower's signature

Lori Ann Weaver
Borrower's signature

NC 12452 MTG (4-98-212484-J) PU